UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-80030-CR-DIMITROULEAS/MATTHEWMAN

UNITED STATES OF AMERICA,
    Plaintiff,

v.

PHILLIP BRAUN,
AARON SINGERMAN,
JAMES BOCCUZZI,
DAVID WINSAUER, and
BLACKSTONE LABS, LLC
    Defendants.
_____/

**DEFENDANTS BRAUN, SINGERMAN, BOCCUZZI, WINSAUER, AND BLACKSTONE LABS, LLC'S JOINT MOTION FOR CONTINUANCE, MOTION TO EXTEND THE TIME WITHIN WHICH TO FILE PRETRIAL MOTIONS AND REQUEST FOR ORAL ARGUMENT**

Defendants, Braun, Singerman, Boccuzzi, Winsauer, and Blackstone Labs, LLC by and through their undersigned counsel move this Court for an Order continuing the trial of this case currently set for calendar call December 27, 2019 and for the two week Trial Docket commencing on January 6, 2020 and for an extension of time within which to file pretrial motions currently due on September 17, 2019. In support of this motion defendant states the following:

1.    This matter is currently scheduled for Calendar Call on December 27, 2019 at 9:00 a.m., and for trial on January 6, 2020.

2.    Pretrial Motions are currently due on or before September 17, 2019.

3.    Defendants have previously waived their right to a Speedy trial through the January 6, 2020 trial date.

**PROCEDURAL AND BACKGROUND INFORMATION**

4.  The indictment charging Mr. Braun, Mr. Singerman, Mr. Boccuzzi, Mr. Winsauer, and Blackstone Labs along with two (2) other individuals and one other (1) LLC was returned on March 7, 2019. It is 28 pages in length and contains fourteen (14) criminal counts and forfeitures for all defendants.

5.  The Government's Certificate of Trial Attorney estimates that the trial of this cause will take approximately twenty (20) days. Defense counsel believes that it will likely last twice as long as the Government's estimate.

6.  All defendants have been released from custody pending trial.

7.  Despite the Court directive requiring "[a]ll discovery is to be provided by May 17, 2019" (DE 143), the government continues to deliver massive amounts of discovery, the most recent of which came only seven (7) days ago, on July 22, 2019, in the form of a thumb drive containing 136,350 pages. While defense counsel recognizes the government's continuing obligation to produce discoverable materials, the ongoing production results in significantly more time required by the defendants to review, organize, and digest this material in advance of the January 6, 2020 scheduled trial date. To date, the Government has delivered more than 248 GB amounting to more than 1 million documents in 2 million pages, not counting the 4.66 TB of data containing the forensic images of computer hard drives and cell phones. None of the materials produced appear to have been newly obtained by the government. In fact, the most recent government discovery delivery consists of documents obtained during the government's grand jury investigation of this case.

Added to this increasing volume of discoverable material received over time is the government's recent disclosure of experts and their summaries on June 13, 2019. This is the first

time the government disclosed its experts as it identified five (5) different experts from several different fields. This disclosure came approximately ninety (90) days before the deadline for defense motions. Accordingly the defense is now actively working to locate and engage experts to evaluate the government's experts and present relevant evidence in defense of the charges.

The result of these discovery productions is that defense counsel and the defendants themselves are in the process of sifting through the massive amounts of discovery in what could be charitably reviewed as a data dump. Even with the government having identified, upon request, categories of discovery that are likely not critical to this case, the reduced amount of discovery to be reviewed is staggering, at least 248 GB of data (2 million pages of material).

8.   Because of a formatting issue, counsel for Defendant Singerman was unable to access any of the documents contained in Government Production Volume 001 on the Flash Drive which was provided on April 3, 2019. On April 16, 2019, the Government provided a DVD to undersigned to replace the inaccessible flash drive originally produced on April 3, 2019.

Counsel for defendants Braun and Blackstone experienced a significant technical issue when first attempting to access the government's "load ready" materials contained in Production Volume 003. Access to that information required replacement of the hard drive and consulting with the defense IT specialist, thereby causing further delay in being able to upload the materials into the search database and thereafter begin the review process.

9.   Subsequent to the April 3, 2019 initial disclosure, the Government has produced discovery on a rolling basis on the following dates:

    a.   **April 24, 2019** - The Government produced an additional 7,717 pages of Discovery materials as Government Production Volumes 003, 004, and 005;

    b.   **May 3, 2019** - The Government produced the forensic images of the

following devices: [1]

- Item #1 - Apple iMac
- Item #2 - Apple iMac
- Item #3 - Apple iMac
- Item #4 - Apple iMac
- Item #5 - Apple iPhone
- Item #6 - Apple iPhone
- Item #7 - Apple iPhone
- Item #8 - Apple laptop
- Item #9 - Apple iMac
- Item #10 - Seagate external 2TB hard drive
- Item #11 - Seagate external 1TB hard drive
- Item #12 - Western Digital external 1 TB hard drive
- Item #13 - Western Digital external 1 TB hard drive
- Item #14 - MacBook Air
- Item #15 - Mac All-in-One
- Item #16 - Mac All-in-One
- Item #17 - HP Elite One 800 G1 Touch
- Item #18 - Apple iPhone
- Item #19 - Apple iPhone

c.  **May 17, 2019** - The Government produced an additional 27,486 pages of discovery as part of Government Production Volumes 006, 007, 008, 009, and 010.

---

[1] All of these devices will need to be reviewed by a defense forensic computer expert for potentially exculpatory information.

- **June 4, 2019** - The Government produced what is has referred to as the "Hot Docs" along with other documents that may or may not be used by the Government as trial exhibits.

- **July 17, 2019** - The Government produced an additional 7.7 GB of discovery which constituted 136,350 pages of discovery materials. What is of interest in this production, is these materials were not newly discovered materials but have been in the Government possession at least since the time of the indictment.

10. To date 2,037,493 pages of discovery have been produced by the Government in addition to the forensically imaged computers and cell phones enumerated above which belong to each of the Defendants.

11. On April 16, 2019, The Government filed an Unopposed Motion to Designate Case as Complex, Continue the Trial Date, Continue Pretrial Deadlines, and Exclude Time Under the Speedy Trial Act. (See DE 94). The Court denied the Government's Motion without prejudice on April 17, 2019. (See DE 98). [2] Defendants previously adopted the Government's April 16, 2019 Motion which was filed on April 18, 2019 and subsequently denied without prejudice by the Court on April 19, 2019. (See DE 107 and 111).

12. The Court scheduled this matter for a status conference on May 3, 2019. All parties were present at the Status Conference and addressed the Court as to the various issues surrounding discovery production, motion deadlines and the trial date. A trial date of January 6, 2020 was scheduled at the May 3, 2019 hearing.

13. Since the May 3, 2019 hearing, the defendants have been diligently reviewing the discovery independently and five (5) of the defendants have been working collaboratively to review the 2,037,493 million pages of produced discovery.

---

[2] This matter was initially scheduled for Trial to commence on May 6, 2019 with a pretrial Motions deadline of April 19, 2019.

14.     The volume of discovery materials provided is enormous. It is impossible to review without the benefits of a computer program to assist in the process. Persons from Richard G. Lubin P.A., (R.G.L., PA) independently interviewed three (3) companies that specialize in managing ESI Discovery of this magnitude. Various proposal were provided to R.G.L., P.A., which ranged from the basic costs of hosting and storing the ESI Discovery to proposals that included employing discovery review specialists to assist with a preliminary review of the materials. The cost proposals in this case ranged from approximately $5,000 per month for simple storage and access to the ESI Discovery to approximately $1,000,000 for storage, access, and assistance with review of the 1.9 million[3] pages of discovery. This process of interviewing and digesting the proposals from each of these companies took approximately thirty (30) days and was determined not to be a financial possibility for any defendant individually. Various of the co-defendants' counsel conducted similar searches for providers that might help in the review of the materials.

15.     Because of the enormous financial burden of reviewing the discovery for any one individual defendant, Defendants Braun and Singerman together hired a Miami based discovery company to host the documents on a document review computer platform program known as Relativity. Because of the financial situation of many of the defendants in this case the costs are currently being paid for by defendants Braun and Singerman although several of the other defendants have access to the Relativity program.

16.     Importantly, in order to upload the discovery onto the Relativity document management program, the files must contain "load ready files"[4]. Until the defense retained a

---

[3] The Government has supplemented discovery on several occasions since the dates of the original discovery management proposals. The proposals were based on the Government's initial disclosure.

[4] This refers to the metadata that is needed to upload the files to an eDiscovery platform such as the one being used in this matter, Relativity.

company to upload and store the files on a searchable platform, defense counsel did not know that the Government had not produced the "load ready files" for tranches 01 and 03 of discovery production. Volume 003 contains approximately 850,000 pages of discovery. The Government provided the "load ready files' directly to undersigned's eDiscovery vendor on July 1, 2019.

17.     At enormous expense to defendants Braun and Singerman, in addition to the defense teams, a supervisory attorney and six (6) full time reviewing attorneys have been hired by defense counsel to assist in the review of the 2,037,493 million pages of discovery for relevance and importance.

18.     Currently, the full time reviewers employed by the Defendants are reviewing and coding approximately 17,000 pages per week. The number of documents reviewed weekly is expected to increase slightly as the reviewers become more familiar with the subject matter areas in this case. Even if the reviewers are able to increase their current production to 20,000 pages per week, it will take approximately **102 weeks** to review all 2,037,493 pages of discovery produced by the Government in this case.

19.     Of the first 77,397 pages reviewed, the parties have determined that 12,419 are relevant to the case, 64,978 are not relevant, and the remaining 582 were not viewable due to technical issues related to corrupted/inaccessible document files. In addition to a preliminary review, individual defense counsel will have to review the "relevant" documents to determine if they are valuable for use at trial and if they are crucial to the preparation of pretrial motions which as set forth in paragraph 2 are currently due on September 17, 2019. Even if counsel had the luxury of reviewing the discovery documents "full time" and was not faced with the burden of a September 17, 2019 motion date, it is impossible that a **meaningful** review could be completed by the current motion deadlines and trial date. If the current ratio of relevant to not relevant pages holds true (at 16%), there will be approximately 325,999 relevant pages in the discovery provided by the Government

to the defendants. The enormous number of documents make it impossible for the defense counsel to review them and factor them into the trial preparation in less than year.

20. Included in the small number of documents reviewed (approximately 77,000) are numerous documents that have nothing to do with the charges in the Indictment. Examples of this are documents relating to:

    a. Terriyaki Sauce Recall;

    b. Chicken Farm Recall;

    c. Internal emails about a DMZ firewall software used internally at FDA;

    d. Resumes for IT technicians to set up the SAS database for this firewall software; and

    e. A certificate of analysis for a company called Newmind. No relevance to this case other than similar ingredient (nootropic) is at issue.

This irrelevant and immaterial production raises questions about the methodology employed by the Government. If documents having nothing to do with the case are carelessly produced, are documents that are relevant to the case likewise carelessly not produced?

21. Making the preparation even more time consuming is that the Government is not specifically identifying the *Brady*[5] and *Giglio*[6] materials. The Government's decision not to specifically identify these materials, significantly delays the review process.

22. The Designer Anabolic Steroid Control Act (DASCA) was signed into law in 2014. Counts 4 and 5 of the indictment in this case are based on DASCA. It is defense counsels' belief that this is the first ever indictment which includes charges based on DASCA, as such, it is a case of first impression. Accordingly, there are no standard jury instructions or case law to guide counsel

---

[5]*Brady v. Maryland*, 373 U.S. 83 (1963)

[6]*Giglio v. United States*, 40 U.S. 150 (1972)

in the preparation process. This means that motions relating to DASCA counts take additional time as does the trial preparations for those counts.

23.     On June 13, 2019 the Government provided defense counsel with the CV's and summaries of five (5) expert witnesses. No reports were provided. Eleven (11) additional experts who conducted qualitative and or quantitative analysis of samples as summarized in the Government's Expert Witness Disclosure were listed. Adding to the enormous task of preparing for motions and trial is the job of locating defense experts to review the Government's expert case and then hiring experts to counter their testimony. (See paragraph 7 above).

24.     As the Court is aware, this Indictment is historical and not responsive. The Government has been investigating the defendants for at least 3 ½ years in which time they have subpoenaed documents, interviewed witnesses, and presented testimony before the Grand Jury. The Government has also had at its disposal the unlimited financial and investigative resources of both the Department of Justice and the Federal Drug Administration during its investigation. It is not surprising if the government does not need as much time as the defense does to prepare for trial.

25.     The Government objects to continuing this case from its current trial date. It is ludicrous for the Government to assert that nine (9) months is sufficient time in which to review 2,037,493 million pages of discovery in any meaningful way, research, prepare, and argue pretrial motions, and prepare for trial while the government has been immersed in a case for a minimum of forty-two (42) months.

26.     The Government has produced what it deems to be the "Hot Docs" in this matter as it believes this should assist undersigned counsel in a more expeditious review of the discovery. The production of these documents by the Government does assist defense counsel in some ways, but it not a substitution for defense counsel's desire and obligation to review all the discovery in this matter. The defendants are facing significant time in prison if there is a conviction in this matter

and should not be forced to rely only on the documents that the Government deems important in this matter in their trial preparations.

27.     Due to the complicated nature of the alleged conspiracy and the underlying investigation, the voluminous discovery, the number of defendants and unindicted co-conspirators involved, this case is complex. The failure to continue the pretrial motions deadline and trial date currently scheduled would result in a miscarriage of justice, and a violation of the Fifth and Sixth Amendments to the United States Constitution. *See* 18 U.S.C. §§ 3161(6), 3161(7)(A), and 3161 (B)(i) and (ii).

28.     The Government concedes that this case is not representative of a traditional criminal prosecution. Not only does the case involve scientific issues requiring the participation of experts in chemistry and pharmacology, but medical experts are also essential in view of the allegation that the nutritional supplements at issue in this case cause harm and injury to consumers. Counsel for the defendants also believe that an expert on the FDA rule making authority and legislative history of the FDCA will be required.

29.     The defendants dispute the scientific and medical allegations in the indictment, and will require an extensive amount of time within which to review the government's scientific and medical discovery, evaluate the government's expert witness submissions, conduct their own scientific examination of the nutraceutical supplements, and locate suitable defense experts.

30.     Rule 45(b) of the Federal Rules of Criminal Procedure authorizes a Court to extend the time within which to set a trial and other matters for good cause. Additionally, the Speedy Trial Act (18 U.S.C. §3161) authorizes a Court to continue a case upon finding that the interests of justice are served by a continuance. A reasonable setting of the trial is needed to prevent a miscarriage of justice that would be occasioned by defense counsel's inability to fully prepare for trial, consistent with the factors identified in 18 U.S.C. §3161(h)(7)(B).

31. Undersigned counsel, Richard G. Lubin, has discussed the request for a continuance by phone with DOJ Trial Attorney David Frank and via electronic mail with DOJ Trial Attorney Alistair Reeder. Additionally, a copy of the Motion was provided to the Government in advance of its filing in attempt to reach an agreement with the Government. The Government has advised that it objects to the request to continue the trial and motion deadlines.

32. Undersigned counsel Richard G Lubin, provided a copy of the instant Motion via electronic mail to Nancy Quinlan, Esq., counsel for Defendant Anthony Ventrella, who has advised that Mr. Ventrella joins the motion; Robert L. Shearin, Esq., Counsel for VennTech Labs, who advised that his client is in agreement with the motion; and to Russell J. Williams, Esq., Counsel for Robert DiMaggio, who has advised that he does "not have any position regarding the motion."

33. Undersigned counsel respectfully request that the current motion deadline of September 17, 2019 be extended and that the trial be rescheduled at time convenient to the Court but not before October 2020.

## REQUEST FOR ORAL ARGUMENT

34. Defendants request that the Court set this Motion for at least a 30 minute oral argument. Defendants believe that the issues raised herein can be explained in better detail and that questions raised by the Court and position taken by the Government can be focused on and responded to at a hearing on this matter.

**WHEREFORE**, for the reasons set forth above, Defendants, Phillip Braun, Aaron Singerman, James Boccuzzi, David Winsauer and Blackstone Labs respectfully requests this Court enter an Order granting Defendants' request for a continuance as outlined herein. Defendants further request that this matter be scheduled for a hearing so that their positions can be more fully explained to the Court.

Dated this 29th day of July, 2019.

                            Respectfully submitted,

                            **RICHARD G. LUBIN, P.A.**
707 North Flagler Drive
West Palm Beach, FL  33401
Telephone:  561-655-2040
Facsimile:   561-655-2182
Email: rich@lubinlaw.com
Attorneys for Defendant Singerman

By:   */s/ Richard G. Lubin*
**RICHARD G. LUBIN**
Fla. Bar No. 182249


*/s/ Amy Morse*
**AMY MORSE, ESQ**.
Morse & Morse, LLC
Of Counsel to Richard G. Lubin, P.A.
707 North Flagler Drive
West Palm Beach, FL 33401
T: (561) 651-4145; F: (561) 655-2182
Email: amy@morselegal.com
FL Bar No.: 0388475
Co-Counsel for Defendant Singerman

*s/Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Phillip Braun

*s/Michael T. Davis*
**MICHAEL T. DAVIS**
Florida Bar No.: 63374

*s/Susan Dmitrovsky*
**SUSAN DMITROVSKY**
Florida Bar No. 73296

12

**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Blackstone Labs, Inc.

/s/ Robert J. Buonauro
**ROBERT J. BUONUARO, B.C.S.**
722 Vassar Street
Orlando, FL 32804
407-841-1940
Fax: 407-649-1936
Florida Bar No. 150756
Counsel for Defendant Winsauer
robert@buonauro.com

 /*s/ J. Stephen Salter*
**J. STEPHEN SALTER**
8975 Pompano Way
Gulf Shores, Alabama 36542
Phone: 205-585-1776
Email: umstakwit@aol.com
Admitted Pro Hac Vice for Defendant Boccuzzi

## **CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that on July 29, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                     By:     */s/ Richard G. Lubin*
                                                    **RICHARD G. LUBIN**