UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80030-CR-Dimitrouleas

UNITED STATES OF AMERICA

vs.

PHILLIP BRAUN,
AARON SINGERMAN,
JAMES BOCCUZZI,
and
BLACKSTONE LABS, LLC,

      Defendants.
_____/

## GOVERNMENT RESPONSE TO MOTION FOR CLARIFICATION

The United States, by and through undersigned counsel, respectfully files its response to defendants' Motion for Clarification (ECF No. 464, hereafter, "Def. Mot."). The Court should determine as a matter of law that three compounds alleged in Count 4, (trendione, halodrol, and epistane) are controlled substances listed in the CSA since December 18, 2014. The jury should determine whether three other *unlisted* compounds alleged in Counts 4-7 are derived from or have a chemical structure substantially similar to anabolic steroids listed in the Controlled Substances Act. The jury should also determine the defendants' knowledge and intent, consistent with the Designer Anabolic Steroid Act and applicable precedents.

## FACTS

A grand jury charged the current defendants and four others in a 14-count indictment alleging two conspiracies and twelve substantive crimes. Indictment, ECF No. 1. Counts 4, 5, 6, 7 and 8 allege violations of the CSA, specifically 21 U.S.C. §§ 841,

846. Indictment at 18-21. All four of the remaining defendants were charged in the CSA conspiracy in Count 4 and each defendant also is charged in at least two separate counts of distribution of controlled substances in violation of 21 U.S.C. § 841.

Count 4 of the Indictment alleges a conspiracy to manufacture or distribute six anabolic steroids: trendione, halodrol, and epistane, which are listed as controlled substances in Schedule III of the CSA, and dimethazine, methylstenbolone, and methyl-1-etiocholenolol, which are not listed but which the indictment alleges are anabolic steroids as defined in 21 U.S.C. § 802(41)(C). Indictment at 19. Count 4 also alleges that serious bodily injury resulted to a victim, C.H., from the use of methyl-1-etiocholenolol during the conspiracy, in violation of 21 U.S.C. § 841(b)(1)(E)(i).

The government previously produced to defendants summaries of expert testimony establishing that dimethazine, methylstenbolone, and methyl-1-etiocholenolol each: a) have a chemical structure substantially similar or derived from a listed anabolic steroid, and b) have a pharmacological effect similar to testosterone, meaning they are anabolic and/or androgenic. See 21 U.S.C. § 802(41)(C)(i).

Trendione, epistane, and halodrol are the common names for anabolic steroids listed in Schedule III of the CSA. Trendione (estra-4,9,11-triene-3,17-dione) is listed at 21 U.S.C. § 802(41)(A)(lxv). Halodrol (4-chloro-17α-methyl-androsta-1,4-diene-3,17β-diol) is listed at 21 U.S.C. § 802(41)(A)(liii). Epistane (2α,3α-epithio-17α-methyl-5α-androstan-17β-ol) is listed at 21 U.S.C. § 802(41)(A)(lx).

Anticipated Trial Proof

The government intends to prove at trial that the defendants conspired to manufacture and distribute products containing the three listed substances – trendione,

epistane, and halodrol – after these substances were added to Schedule III of the CSA on December 18, 2014. The government also intends to prove at trial that the defendants conspired to manufacture and distribute products containing the three unlisted substances, and that each of these substances falls within the statutory definition of anabolic steroids in section 802(41)(C). The government expects the trial proof to include direct evidence that each defendant knew that these substances were controlled substances, as well as circumstantial evidence of the same. The government's trial proof is expected to include expert testimony, testimony of co-conspirators, testimony of the defendants' agents and employees, and numerous documents created or adopted by the defendants that are directly relevant to their knowledge that dimethazine, methylstenbolone, and methyl-1-etiocholenolol has a chemical structure substantially similar to one or more anabolic steroids listed in the Controlled Substances Act.

## **LEGAL BACKGROUND**

The defendants' motion seeks clarification on legal issues relating to the Designer Anabolic Steroid Control Act of 2014, Pub. L. 113-260, 128 Stat. 2929 ("DASCA") (enacted on Dec. 18, 2014). DASCA expanded the list of named anabolic steroids and also defined substances derived from or "substantially similar" to those in 21 U.S.C. § 802(41)(A) as anabolic steroids, stating:

> a drug or hormonal substance not specifically listed or excepted, but instead derived from, or that has a chemical structure substantially similar to, 1 [one] or more anabolic steroids listed in subparagraph (A), shall be considered an anabolic steroid for purposes of this chapter [13 Drug Abuse Prevention and Control] if --
> (I) the drug or substance has been created or manufactured with the intent of producing a drug or other substance that either—
> (aa) promotes muscle growth; or
> (bb) otherwise causes a pharmacological effect similar to that of testosterone; or

3

>  (II)  the drug or substance has been, or is intended to be, marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

Id. § 802(41)(C)(i)(I)-(II).

Due process requires that the government prove beyond a reasonable doubt each element necessary for a conviction. Harvell v. Nagle, 58 F.3d 1541, 1542 (11th Cir. 1995) reh'g denied, 70 F.3d 1287 (11th Cir. 1995) (citing In re Winship, 397 U.S. 358, 64 (1970)).

Law of the Case

After the defendants filed three motions to dismiss the indictment centered on arguments about DASCA, the parties extensively briefed the textual meaning, statutory construction, and legislative history of DASCA. See e.g., Government Oppositions to Motions to Dismiss, ECF Nos. 258, 262, 370. After oral arguments in March 2020, the Court entered several relevant orders denying the defendants' motions, concluding that "it is clear that Congress intended to include substances that were substantially similar to anabolic steroids as illegal substances, as long as they were marketed as promoting muscle growth or having a pharmacological effect similar to testosterone." Order Denying Mot. Dismiss, ECF No. 336, at 2. The Court also found "appellate opinions on the Analogue Act to be applicable to the DASCA statute." ECF No. 336, at 3 (citing United States. v. Carlson, 87 F. 3d 440 (11th Cir. 1996); United States v. Fisher, 289 F.3d 1329 (11th Cir. 2002)).

Of particular relevance to the issue in this motion, the Court stated that:

Whether a substance is a controlled substance is a question of law for the Court to decide. U.S. v. Phifer, 909 F. 3d 372, 385 (11th Cir. 2018) citing McDermott Int'l v. Wilander, 498 U.S. 337, 356 (1991). It is a fact question

4

> for the jury to determine whether the defendant knew the substance was a controlled substance under federal law. McFadden v. U.S., 135 S. Ct. 2298 (2015).

Order Denying Mot. Dismiss re Vagueness, EFC No. 363, at 1-2. The Court additionally noted, "Whether a substance is substantially similar is an issue best left for resolution at trial." Id., at 2.

## ARGUMENT

### I. The Court Should Determine Which Substances Are Listed as Controlled Substances

As listed controlled substances are enumerated in statute, the Court should determine as a matter of law that trendione, halodrol, and epistane are anabolic steroids listed in the CSA and therefore are controlled substances. These substances are listed by their chemical nomenclature in the CSA, and referred to by their common names in Count 4 of the indictment. The Court can take judicial notice of the common names.[1] Fed. R. Evid. 201.

### II. The Jury Should Determine Whether Unlisted Substances are Substantially Similar

The Court should instruct the jury that the government must prove beyond a reasonable doubt that the unlisted substances are substantially similar to listed anabolic steroids. See In re Winship, 379 U.S. 358 at 364.

In order for a compound to be an analogue or designer steroid covered by DASCA,

---

[1] E.g., *Trendione, Estra-4,9,11-Triene-3,17-Dione*, PubChem, National Library of Medicine, (available at https://pubchem.ncbi.nlm.nih.gov/#query=4642-95-9);
*Epistane, 2alpha,3alpha-epithio-17alpha-methyl-5aplha-androstan-17beta-ol*, PubChem, National Library of Medicine, (available at https://pubchem.ncbi.nlm.nih.gov/compound/71752521)
*Halodrol, 4-chloro-17α-methyl-androsta-1,4-diene-3,17β-diol*, PubChem, National Library of Medicine, (available at https://pubchem.ncbi.nlm.nih.gov/compound/29976098).

its chemical structure must be substantially similar to a listed compound. 21 U.S.C. § 802(32)(A) (Analogue Act); § 802(41)(C) (DASCA).  Accordingly, courts in the Eleventh Circuit permit the trier of fact to consider whether a particular compound is "substantially similar."  United States v. Brown, 415 F.3d 1257, 1271 (11th Cir. 2005) (upholding conviction for analogue drug charge and noting that the evidence was sufficient for the "factfinder's determination" of substantial similarity).  See also United States v. Fedida, 942 F. Supp. 2d 1270, 1279 (M.D. Fla. 2013) ("A reasonable layperson who examines the two-dimensional drawings of the chemical structures . . . could plausibly conclude that such substances are substantially similar.  This is all that is required.")

Given the obvious parallels with DASCA, these Analogue Act precedents apply here, and the jury should determine whether the unlisted compounds are substantially similar to a listed steroid.

### III.   The Jury Should Determine Whether Defendants Acted Knowingly

The government agrees with the Court and defendants that defendants' knowledge is an issue for the jury.  As this Court previously noted, the Supreme Court has also held that a jury must determine whether the defendant knew the substance was a controlled substance under federal law. ECF No. 336, at 1-2 (citing McFadden, 576 U.S. 186 (2015)).  Specifically, McFadden held that "the Government must prove that a defendant knew that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue." 576 U.S. at 194.  McFadden further held that the knowledge of an analogue can be established in two ways.

> First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the

6

particular identity of the substance. Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.

Id. at 194. The Supreme Court further described these two ways to prove knowledge as "either by knowledge that a substance is listed or treated as listed by operation of the Analogue Act, 21 U.S.C. §§ 802(6), 813, or by knowledge of the physical characteristics that give rise to that treatment." Id. at 196 (citations omitted).

As discussed, this Court previously ruled that Analogue Act precedents are applicable to the current case and DASCA. The government can therefore prove that a Defendant "knowingly" distributed an unlisted anabolic steroid two ways:

(1) the Defendant knew he distributed a substance actually listed on the Federal schedule of controlled substances or treated as such by the Designer Anabolic Steroid Control Act, even if the Defendant did not know the identity of the substance; or

(2) the Defendant knew the substance he distributed had a chemical structure derived from or substantially similar to one or more anabolic steroids listed in the Controlled Substances Act, and either:

- a. knew the substance was created or manufactured with the intent of producing a drug or other substance that either:
  - i. promotes muscle growth or
  - ii. causes a pharmacological effect similar to testosterone, or

- b. knew the substance has been or is intended to be marketed or otherwise promoted in any manner suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to that of testosterone.

This second version of knowledge is comparable to the standard jury instruction for knowing distribution of a controlled substance: "the Defendant knew the identity of the substance he possessed, even if the Defendant did not know the substance was listed on the federal schedules of controlled substances." E.g., McFadden, 576 U.S. at 186.

### IV. <u>United States v. Phifer is Distinguishable</u>

The government also briefly addresses <u>United States v. Phifer</u>, which was discussed in the defendants' motion. Def. Mot. at 3-4 (citing <u>Phifer</u>, 909 F.3d 372 (11th Cir. 2018)). In short, <u>Phifer</u> is not controlling precedent on the questions at issue. <u>Phifer</u> required the Eleventh Circuit to determine the definition of "positional isomer," a scientific term of art that was also defined in regulations. <u>Id.</u> at 381. Based in part on a complicated regulatory scheme and history, the Eleventh Circuit found ambiguity in the term's use within the Code of Federal Regulations. <u>Id.</u> at 381-86. In contrast, DASCA is unambiguous, and this Court already rejected a vagueness challenge to the term "substantially similar," in agreement with binding precedent and many other federal courts.[2] <u>Phifer</u> provides an example of a court determining conflicting terms of art in regulation, but does not apply to the question at hand. For the term "substantial similarity," the plain language of the statute is sufficient. E.g., <u>Brown</u>, 415 F.3d at 1271.

---

[2] See, e.g., <u>Fisher</u>, 289 F.3d 1329; <u>United States v. Carlson</u>, 87 F.3d 440 (11th Cir. 1996); see also <u>United States v. Ansaldi</u>, 372 F.3d 118, 122 (2d. Cir. 2004); <u>United States v. Roberts</u>, 363 F.3d 118, 127 (2d Cir. 2004); <u>United States v. Klecker</u>, 348 F.3d 69, 71-72 (4th Cir. 2003) ("courts of appeals have unanimously rejected vagueness challenges to the Analogue Act."); <u>United States v. Granberry</u>, 916 F.2d 1008, 1010 (5th Cir. 1990) (ruling that the CSA's Analogue Provision is "clearly and specifically defined, in terms readily comprehensible to the ordinary reader"); <u>United States v. Hofstatter</u>, 8 F.3d 316 (6th Cir. 1993); <u>United States v. Turcotte</u>, 405 F.3d 515, 531 (7th Cir. 2005) ("The circuit courts considering this issue have unanimously held that the CSA's Analogue Provision is not unconstitutionally vague"); <u>United States v. Berger</u>, 553 F.3d 1107, 1110 (8th Cir. 2009) ("the statute is not unconstitutionally vague"); <u>United States v. Bamberg</u>, 478 F.3d 934, 937 (8th Cir. 2007) ("The lack-of-notice argument fails"); <u>United States v. Washam</u>, 312 F.3d 926 (8th Cir. 2002); <u>United States v. Orchard</u>, 332 F.3d 1133, 1138 (8th Cir. 2003); <u>United States v. McKinney</u>, 79 F.3d 105, 107-08 (8th Cir. 1996) <u>vacated on unrelated grounds</u>, 520 U.S. 1226 (1997); <u>United States v. Raymer</u>, 941 F.2d 1031, 1045-46 (10th Cir. 1991)

## CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully asks the Court to confirm its earlier Orders regarding the Designer Anabolic Steroid Control Act.

Dated: September 23, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

GUSTAV W. EYLER
DIRECTOR
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

   */s/ Alistair Reader*
ALISTAIR F. A. READER
Court ID A5502377
Trial Attorney
STEPHEN J. GRIPKEY
Court ID A5502620
Trial Attorney
JOHN W. BURKE
Court ID A5501294
Assistant Director
U.S. Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044-0386
Alistair.F.Reader@usdoj.gov
(202) 353-9930
Stephen.Gripkey@usdoj.gov
(202) 307-0048
Josh.Burke@usdoj.gov
(202) 353-2001

## CERTIFICATE OF SERVICE

    I hereby certify that on September 23, 2021, I electronically filed the foregoing document with the Clerk of the Court, suing the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                     /s/ *Alistair Reader*
                                                  Alistair F. A. Reader
                                                  U.S. Department of Justice