UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80030-CR-DIMITROULEAS/MATTHEWMAN

UNITED STATES OF AMERICA

v.

BLACKSTONE LABS, LLC

_____/

**DEFENDANT BLACKSTONE LABS' SENTENCING MEMORANDUM**

COMES NOW Defendant Blackstone Labs, LLC, by and through undersigned counsel of record, pursuant to the Local Rules for the Southern District of Florida and the Federal Rules of Criminal Procedure, and hereby submits this Sentencing Memorandum, in which it moves this Court to consider the reforms that have been instituted at Blackstone by way of new ownership among other factors, and impose the penalties agreed to in the plea agreement with the Government, to include an agreed upon forfeiture of $1,223,430.

I.   **Preliminary Statement**

Defendant, Blackstone Labs, LLC (hereafter "Blackstone"), is a closely held corporation organized under the laws of Florida in 2012. Blackstone pled guilty to a variety of charges related to unlawful products it distributed from 2014 to 2016. Additionally, Blackstone has accepted responsibility for the unlawful activity through the statement of its current COO, JR Newton, provided to the probation officer and included in the Presentence Investigation Report ("PSR") at ¶ 136. Jared Wheat, who now owns two-thirds of Blackstone, was not an owner during the period of time the company was involved in illegal activity. Mr. Wheat has loaned the company millions of dollars in an attempt to keep the company alive and repair the damage done by the previous owners' criminal behavior. Letter from Jared R. Wheat, Exhibit A at 1.

Mr. Wheat has decades of experience in the supplement industry and experience rehabilitating businesses in distress. *Id.* Mr. Wheat's supplement manufacturing company is now the sole manufacturer of Blackstone products. It is part of Mr. Wheat's business model to take companies in the supplement industry that, for one reason or another, have found themselves in dire need of assistance, and turn these businesses around for the betterment of both the business itself and the industry as a whole. *Id.*

Mr. Wheat's vision for Blackstone is a work in progress—since becoming an owner, he has ensured that all products are properly manufactured by his own company and promoted trustworthy individuals. *Id.* However, Blackstone is in significant debt and a fine within the guideline range would not only substantially jeopardize the continued viability of Blackstone but would guarantee its financial failure. *See* PSR at ¶¶ 153-159; Exhibit A at 2 ("a sentence above the $1,000,000 forfeiture…would be the death knell for Blackstone Labs"). For this reason, Defendant moves this Court to find that a period of probation combined with the $1,223,430[1] forfeiture that was agreed to in the plea agreement is sufficient to achieve the purposes of sentencing in this case.

**II.    Mr. Wheat's Involvement in Blackstone Labs, LLC**

   *A. Mr. Wheat's Investment Timeline*

Mr. Wheat has been in the supplement industry since 1994 when he founded Hi-Tech Pharmaceuticals (hereafter "Hi-Tech"). Exhibit A at 1. Since the creation of Hi-Tech, it has expanded tremendously from a fledgling supplement company that paid to have its products contract manufactured by outside companies, to a company with the equipment and raw materials to assemble and manufacture products designed by Mr. Wheat. *Id.*  Hi-Tech has developed into a

---

[1] Blackstone's Plea Agreement sets out in greater detail the amounts that comprise the total $1,223,430—seized funds in the amount of $223,430.40 and a voluntary forfeiture money judgment for $1,000,000. Doc. 544 at ¶¶ 17,18.

much larger company over the years and now sells finished goods, raw materials and engages in contract manufacturing for other supplement companies. *Id.* Meanwhile, Mr. Wheat maintains sole ownership of Hi-Tech. *Id.* Through his decades of experience in the industry, Mr. Wheat has witnessed many supplement companies fail for various reasons, including criminal charges and sanctions, civil litigation, and other financial downfalls primarily having to do with companies unable to stay within their financial means and assuming debt to fill the gap. *Id.* The success of Hi-Tech Pharmaceuticals has allowed Mr. Wheat to reform and assist supplement companies facing these various troubles. That has been Mr. Wheat's goal since he purchased a one-third interest in Blackstone in 2017.[2] *Id.* In advance of investing in Blackstone, Mr. Wheat's first priority was ensuring that all Designer Anabolic Steroid Control Act of 2014 ("DASCA") violating substances and Selective Androgen Receptor Modulators ("SARMS") were removed from Blackstone's inventory. *Id.* Accordingly, the record reflects that unlawful activity within Blackstone ceased prior to Mr. Wheat acquiring his one-third interest. *See* PSR at ¶ 79 (referencing the period of time these products were sold by Blackstone). Mr. Wheat purchased Aaron Singerman's interest in Blackstone in 2018, giving him a controlling two-thirds interest in the company. Exhibit A at 1.

With respect to Blackstone's current operations, Mr. Wheat has implemented a number of changes over the course of his association with the company. First, when Mr. Wheat acquired a majority interest in the company, it was decided that he would exclusively manage the manufacturing and distribution of Blackstone products, including the formulation of products. PSR at ¶ 147. Relatedly, it was determined that Blackstone will purchase ingredients exclusively from

---

[2] Mr. Wheat, like any other investor in his position, hopes to profit from the ownership of each distressed company he purchases, to include the purchase of Blackstone.

Mr. Wheat's company, Hi-Tech Pharmaceuticals. *Id.* Mr. Wheat has also promoted J.R. Newton, who Mr. Wheat trusts implicitly, to the position of chief operating officer in order to stay apprised of company dealings and ensure the business continues to operate with integrity. *Id*. at ¶ 148; Exhibit A at 1. Mr. Wheat employs a team of lawyers with decades of experience with the FDA, DASCA, and laws concerning dietary supplements; Mr. Wheat utilizes these lawyers as a precaution to help prevent future legal issues with his businesses, which now includes Blackstone. PSR at ¶ 149.

### B. Blackstone' Substantial Debts

Mr. Wheat saw the value in Blackstone Labs when he bought his initial interest in the company, and continues to see its value today. Exhibit A at 1, 2. That potential he sees is the reason he has drawn no money on his investment in Blackstone and why he has loaned the company close to four million dollars, both personally and through Hi-Tech Pharmaceuticals, without taking any distributions or salary. *Id.* at 1; PSR at ¶ 146.

Despite Mr. Wheat's optimism about the future for Blackstone, he knows the company will not survive a fine within the guideline range. Since 2018, Mr. Wheat has personally loaned Blackstone over $1,700,000 toward legal fees, and Hi-Tech Pharmaceuticals has loaned Blackstone over $2,200,000 for inventory to keep the company in operation and save the jobs of its seventeen employees. Exhibit A at 1-2.

As the controlling owner, Mr. Wheat agreed to loan Blackstone an additional one million dollars to be forfeited hoping the company could resolve the case and "rebuild in peace," as Blackstone could not pay a forfeiture in this amount without a loan. *Id.* In doing so, Mr. Wheat trusts that this forfeiture, along with the additional $223,430 previously seized from Blackstone's bank account, and the financial penalties imposed on PJ Braun and Aaron Singerman, will be

sufficient for the company to make amends, move forward, and begin to pay off its debts. Mr. Wheat will be owed approximately five million dollars by Blackstone following his loan to cover the forfeiture judgment. *Id.*

For the reasons stated above, Defendant and its principal owner, Mr. Wheat, respectfully request that this Court impose a term of probation and forfeiture in the agreed upon amount. Defendant respectfully submits that any further financial penalty would substantially jeopardize the company's existence: its ability to continue operations, pay its employees, and repay its debts, an outcome that is inconsistent with the purposes of sentencing organizations.

### III. Sentencing Factors Relevant to This Case

As this Court is aware, when sentencing a defendant, district courts impose fines based on a set of statutory standards located in 18 U.S.C. §§ 3553(a) and 3572. Additionally, § 3553(a)(2) requires that the sentence imposed be sufficient, but not greater than necessary to comply with the purposes of sentencing to the extent they are applicable—retribution, deterrence, incapacitation, and rehabilitation.

#### A. *18 U.S.C. § 3553(a) Factors*

Among the § 3553(a) factors relevant in this case are the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available.

##### i. *Nature and Circumstances of the Offense*

Defendant pled guilty to Counts 1, 3, and 4 of the indictment charging the Defendant with conspiracy to defraud the U.S. Food and Drug Administration and to commit mail and wire fraud; introducing unapproved new drugs into interstate commerce; and conspiracy to manufacture and distribute Schedule III controlled substances.

As indicated in the plea agreement, the guideline that produces the highest offense level in this case is that for the Count 1 conspiracy, with a total offense level of 24, and the parties have agreed that the Court should use this offense level in its sentencing determination. Doc. 544 at ¶ 10. The parties agree the recommended culpability score is 5, resulting in a multiplier from 1.00 to 2.00. *Id.* at ¶ 12. The agreed-to offense level and culpability score result in a fine range calculation of $3,500,000 to $7,000,000. *Id.* at ¶ 14. However, the Government acknowledged in the plea agreement that the company's financial records reflect that the Defendant is unable to pay a fine within that range. *Id.* at ¶ 15; *see also* PSR at ¶ 14.

### ii. History and Characteristics of the Defendant

As previously detailed, Blackstone Labs is not the same company it was when these offenses were committed. It is now under the ownership of Mr. Wheat who successfully transforms supplement companies faced with unfortunate financial circumstances, or otherwise damaged by actions of their previous owners, into profitable supplement businesses. Exhibit A at 1. Prior to Mr. Wheat's initial investment in Blackstone Labs in 2017, all Blackstone's illegal products had been eliminated, and all products sold by Blackstone are now manufactured by Hi-Tech Pharmaceuticals. *Id.*

Despite Mr. Wheat's reformation of Blackstone Labs, both Defendant and Mr. Wheat acknowledge the offenses at issue in this case are part of Blackstone's history. *Id.* at 2. As such, the company has accepted responsibility for the earlier unlawful actions taken by its previous owners and employees. PSR at ¶ 136.

### iii. The Kinds of Sentences Available

Other than a fine, forfeiture, and restitution which are discussed separately herein, the Sentencing Guidelines recommend a term of probation between one and five years under the

circumstances of this case. PSR ¶ 184, U.S.S.G. § 8D1.2(a)(1). Additionally, the term of probation "should be sufficient, but not more than necessary, to accomplish the court's specific objectives in imposing the term of probation." Application Note 1, U.S.S.G. § 8D1.2. The Guidelines list a number of possible reasons for ordering a term of probation including, *inter alia*, ensuring payment of a monetary penalty that was not paid in full at the time of sentencing, and ensuring that changes are made within the organization to reduce the likelihood of future criminal conduct. U.S.S.G. § 8D1.1(a).

Blackstone respectfully submits that a two-year term of probation is sufficient under the circumstances. If the Court determines that restitution and the proposed forfeiture amounts are sufficient monetary penalties, these sums will be paid immediately upon sentencing and will not require a term of probation to ensure payment. Additionally, Blackstone has already undergone the internal changes, which would have supported a longer term of probation under the Guidelines, by removing all offending products and moving all manufacturing exclusively to Hi-Tech Pharmaceuticals so that the products are subject to Mr. Wheat's oversight. Consequently, a term of probation exceeding two years is not necessary to accomplish the objectives contemplated by the Guidelines.

    iv.    ***The Need to Provide Restitution to Any Victims***

The Presentence Investigation Report notes Blackstone must make restitution to one victim in the amount of $33,155.23 joint and several with all co-defendants, Leonard Shemtob, and Strong Supplements. PSR at ¶¶ 187. Defendant Singerman stated that he would pay the restitution in full prior to his sentencing; thus, restitution obligations in this case should be fully satisfied prior to Blackstone's sentencing. *See* Defendant Aaron Singerman's Sentencing Memorandum, Doc. 636 at 17.

### B. *The Need for the Sentence Imposed to Comply with the Purposes of Sentencing*

As this Court knows well, the sentence imposed on a defendant should further the purposes of sentencing, which include promoting respect for the law, providing just punishment for the offense, and affording adequate general and specific deterrence. 18 U.S.C. § 3553(a)(2).

The guilty plea and sentencing of Blackstone are clearly appropriate under the circumstances, and its agreement with the Government provides deterrence to other similarly situated companies. That general deterrence derives from not only Blackstone's plea and sentence, but from all of the individuals who have plead guilty, including two of Blackstone's founders, along with several employees and associates who have either plead guilty or were found guilty at trial. This result projects to the supplement industry that the Government has successfully "rolled up" all responsible people and entities, as it should. That deterrent message does not have to include destroying a company that has now been reformed. The $1 Million forfeiture, along with the sentences that will be handed down for other defendants, provides sufficient deterrence without the necessity of shuttering the business and a loss of jobs for Blackstone's current employees.

There is no noteworthy benefit to imposing a fine in addition to the agreed-to forfeiture with respect to specific deterrence of the Defendant from future illegal conduct. Blackstone Labs, while using the same facilities and name, is not the same company it was at the time of these offenses—it has a new majority owner who is committed to making the company successful while maintaining its corporate integrity. Additionally, the only remaining original owner from the time of the offenses is Phillip Braun. Mr. Braun pled guilty, accepted responsibility for his role in the company's unlawful acts, and will receive a sentence that the Court finds meets the purposes of sentencing, including deterring him from engaging in similar conduct in the future.

For these reasons, a sentence comprised of the agreed-to forfeiture, restitution, and a term of probation, is sufficient to fulfill the goals and purposes of sentencing.

### C. 18 U.S.C. § 3572 Factors

Among the 18 U.S.C. § 3572(a) factors concerned with the imposition of a fine at sentencing, those significant to this case include the defendant's financial resources, the burden a fine will impose on those dependent on Blackstone, and measures taken to prevent a recurrence of such an offense.

#### i. *Inability to Pay an Additional Fine*

Both 18 U.S.C. § 3572(a)(1) and the Sentencing Guidelines direct district courts to consider the Defendant's ability, or inability, to pay a fine at sentencing. Specifically, U.S.S.G. § 8C3.3 provides for the reduction of the fine amount below the guideline range if "the organization is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum fine required." This provision applies when the payment of a fine within the guideline range would substantially jeopardize the continued existence of the company. *See* Application Note 1, U.S.S.G. § 8C3.3; *see also*, U.S.S.G. § 8C2.2(b)(if it is readily ascertainable that the organization will be unable to pay the minimum guideline fine, even on an installment schedule, a determination of the fine range is unnecessary, and the court can use the preliminary determination and apply § 8C3.3 in deciding an appropriate fine).

As previously explained, Blackstone is projected to be in debt to the tune of $5,000,000 after payment of the $1,000,000 forfeiture agreed to in the Plea Agreement. Mr. Wheat believes in this company and is confident that, given the opportunity to put its regrettable history behind it by paying the proposed forfeiture amount, Blackstone can rebuild its reputation, become profitable and grow, and continue to employ the people that depend on it. Exhibit A. Any fine above the

agreed-to forfeiture amount would result in more debt and push Blackstone past the point of rebuilding. A higher fine would cost employees their livelihoods and Mr. Wheat his entire investment, including the $4,000,000 he has already loaned Blackstone.

### ii. *Measures Subsequently Taken by Blackstone Labs*

Pursuant to § 3572(a)(8), the Court must consider any measures taken by the organization to prevent a recurrence of the offense. As previously discussed herein, Blackstone Labs has undergone many changes since the time of its illegal acts, the most significant being Mr. Wheat's acquisition of the majority ownership in the company. Mr. Wheat, who was not involved in the illegal acts of Blackstone and had no financial interest at the time of the offenses, is now the majority owner in Blackstone. Mr. Wheat requires all Blackstone products be manufactured exclusively by his company, Hi-Tech, and has promoted trusted employees to ensure honesty and compliance within Blackstone. Exhibit A at 1.

### iii. *The Burden a Fine Will Impose Upon Blackstone Labs and Others*

If Blackstone Labs is forced to close its doors as a result of an additional monetary penalty, it is not only Mr. Wheat's investment that will be lost. Seventeen employees will also be put out of work. PSR at ¶ 141. This would be the exact result Mr. Wheat sought to avoid when he invested in Blackstone and loaned it millions of dollars to keep it in operation. Exhibit A at 2.

## IV. U.S.S.G. § 8C3.4

In addition to inability to pay, the Sentencing Commission has considered the financial relationship of an organization to its owners. U.S.S.G. § 8C3.4. The probation office acknowledged that this is a factor to be considered in determining the fine for Blackstone. PSR at ¶ 182. In the background for § 8C3.4, the Guidelines acknowledge that most closely held organizations are the alter egos of their owner-managers and therefore appropriate punishment

may be achieved by an "offset" of the fine imposed on the organization by an amount that reflects the percentage ownership interest of the sentenced individuals and the magnitude of the fines imposed on those individuals when the organization and individuals owning at least five percent interest in the organization are being sentenced for the same offense conduct.

Mr. Singerman, who was a thirty-five percent owner at the time of the offenses, has agreed to a forfeiture judgment against him of $2,900,000, and Mr. Braun, who remains a thirty-five percent owner of Blackstone, has agreed to a forfeiture judgment in the amount of $3,000,000. *See* Doc. 536 at ¶ 13; Doc. 534 at ¶ 12(a). Additionally, $223,430.40 seized from a bank account in Blackstone's name will be forfeited.

Applying the same logic of U.S.S.G. § 8C3.4, this Court should consider the financial penalties imposed on PJ Braun and Aaron Singerman at sentencing and conclude that their financial penalties, combined with Blackstone's $1,000,000 forfeiture judgment is a sufficient financial punishment for the conduct involved.[3] When combined, these penalties show the magnitude of the financial penalties imposed in this case and why the Defendant's proposed sentence is sufficient, but no greater than necessary, to comply with the purposes of sentencing.

V.   **Conclusion**

Blackstone Labs, LLC has agreed to the forfeiture of $223,430.40 in seized funds and an additional $1,000,000 forfeiture through a loan to Blackstone by Mr. Wheat, who invested in the company after its offensive conduct and instigated reforms. This loan will bring Blackstone's

---

[3] The financial penalties, including restitution, that will be recovered from Blackstone, Braun, and Singerman amount to over $7,156,000, which exceeds the upper bounds of the guideline range calculated in the plea agreement and PSR for Blackstone and exceeds the amount Defendants gained as a result of their unlawful actions. Even considering the calculation under § 8C3.4, which provides that the offset should be proportional to the amount of ownership the individual defendant had in the company, the offset would exceed $2,000,000, which combined with Blackstone's forfeiture judgment would total $3,288,430, only slightly below the guideline range.

11

indebtedness to Mr. Wheat to nearly $5,000,000. Blackstone respectfully submits to this Court that a fine beyond the forfeiture that was agreed to in its plea agreement would not further the purposes of sentencing and would instead likely force Blackstone out of existence, costing seventeen employees their livelihoods and Mr. Wheat his investment. The purposes of sentencing would be best achieved by imposing on Blackstone the forfeiture proposed in the plea agreement, coupled with a two-year term of probation, and no additional fine.

Date: January 26, 2022                                     Respectfully submitted,

                                              By:    /s/ Arthur W. Leach
                                                     **ARTHUR W. LEACH**
                                                     The Law Office of Arthur W. Leach
                                                     4080 McGinnis Ferry Rd, Suite 401
                                                     Alpharetta, GA 30005
                                                     Telephone: 404-786-6443
                                                     Email: Art@ArthurWLeach.com
                                                     *Admitted Pro Hac Vice*
                                                     *Counsel for Blackstone Labs*

                                                      /s/ Susan Dmitrovksy
                                                     **SUSAN DMITROVSKY**
                                                     Kuehne Davis Law, P.A.
                                                     100 SE 2 Street, Suite 3105
                                                     Miami, FL 33131-2154
                                                     Telephone: 305-780-5989
                                                     Email: susand@kuehnelaw.com
                                                     *Fla. Bar No. 0073296*
                                                     *Counsel for Blackstone Labs*

                                                      /s/ Michael T. Davis
                                                     **MICHAEL T. DAVIS**
                                                     Kuehne Davis Law, P.A.
                                                     100 SE 2 Street, Suite 3105
                                                     Miami, FL 33131-2154
                                                     Telephone: 305-780-5989
                                                     Email: mdavis@kuehnelaw.com
                                                     *Fla. Bar No. 63374*
                                                     *Counsel for Blackstone Labs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 26, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the foregoing document is being served this day on all counsels of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Michael T. Davis*
        **MICHAEL T. DAVIS**